GEORGIA CASUALTY COMPANY, Respondent, vs. AMERICAN
MILLING COMPANY, Appellant.

*April 4—June 25, 1919.*

*Master and servant: Negligence: Fellow-servants: Servants of
separate masters: Evidence: Doctrine of res ipsa loquitur: Ad-
miralty: Jurisdiction: Saving of common-law remedy: Work-
men's compensation laws: Maritime injuries: Jurisdiction of
state courts: Injuries to stevedore: Damages.*

1. Where a servant was injured through the negligence of a ser-
vant of another master, the negligence cannot be said to be that
of a fellow-servant, although both masters were engaged in
the same enterprise, namely, the unloading of a vessel, there
being no identity of control.
2. Where both an apparatus and its operation are in the control of
defendant, and an accident happens which could not ordi-
narily happen except by reason of defective apparatus or neg-
ligent operation by defendant's servants, the fact of the acci-
dent might be sufficient of itself to justify a finding of defect
in the apparatus or negligence in its operation.
3. Under sec. 9 of the federal Judiciary Act of 1789 and sub. 3,
sec. 24, and sec. 256 of the Judicial Code, admiralty jurisdic-
tion is vested exclusively in the United States district courts,
saving to suitors, in all cases, the right of a common-law rem-
edy, where the common law is competent to give it.
4. The work of a stevedore in loading or unloading a ship lying at
a wharf is maritime service, and actionable injuries received
during such work are so far maritime injuries that recovery
may be had for them in the admiralty courts by libel *in per-
sonam* against the stevedore company which employs him.
5. Workmen's compensation laws provide remedies wholly un-
known to the common law, which are incapable of enforcement
by the ordinary process of any court, and are not saved to
suitors by the saving clause in sec. 9 of the Judiciary Act of
1789, relating to admiralty jurisdiction.
6. The common-law jurisdiction of the state courts over torts
committed at sea is preserved by such saving clause, but reme-
dies by proceedings *in rem* can only be administered in the
admiralty courts.
7. Where a stevedore is injured while unloading a vessel at a
wharf and does not seek a remedy against the vessel itself, he
may recover full damages in a common-law action in a state
court, and *it seems* may recover the same in an action in a
maritime court.

APPEAL from a judgment of the circuit court for Douglas county: FRANK A. ROSS, Circuit Judge.  *Affirmed.*

This is an action brought by the plaintiff as assignee of one Elmer Emerson for personal injuries suffered by said Emerson as the result of the alleged negligence of the defendant company July 30, 1916.   The facts are not materially in dispute.   Emerson was a stevedore in the employ of the Duffy Stevedore Company, a copartnership, and was seriously injured during the unloading of the steamer La Salle while that steamer was lying at the dock adjoining the defendant's elevator in the harbor at Superior.

The cargo was a cargo of screenings owned by Minneapolis parties, and it was being elevated into the elevator building for storage.   The method was this: An adjustable spout, called a marine leg, was let down from the side of the elevator into the hold of the boat, in which operated an endless belt equipped with buckets which carried the grain up the leg into the elevator.   For a time the buckets needed no assistance from stevedores, the grain running by gravity into the buckets, but as the work went on and the grain was taken out so that it slanted away from the end of the marine leg at an angle of about forty-five degrees, assistance by stevedores became necessary, first by hand shovels, and later, as the grain retreated further, by so-called power shovels or scrapers which hauled the grain to the foot of the marine leg.   The power shovel was operated by a steel cable attached to it and running to a drum on a shaft revolving rapidly and constantly on the outside of the elevator about eighteen feet above the dock, which shaft was impelled by an electric motor inside the elevator.   The drum revolved only when a clutch was engaged by friction with the drum, and the clutch operated only when a rope attached to a lever was pulled by an employee of the defendant standing on the deck of the boat, who pulled it when it was desired to draw the shovel or scraper full of grain towards the foot of the leg. It is undisputed that in order to keep the clutch in opera-

tion the operator must continue to pull on his rope, otherwise the clutch at once becomes disengaged and the drum ceases to operate. The work of the stevedores, when the power shovel was in use, was to take hold of the handles of the shovel, pull it back from the leg as the steel rope unwound from the drum, let it fill with grain, and then, as the rope was pulled and the clutch engaged, follow the shovel to the foot of the leg, dump it, and repeat the operation. The employee of the defendant operating the rope to the clutch could see the stevedores much of the time through the open hatch and knew when they were ready to have the rope pulled, and under such circumstances would pull it without signal. When, however, the men took the shovel so far from the hatch as to be out of sight, they would give a signal by hollering "All right" to the rope man. At the time of the accident Emerson and another stevedore had just got up to the leg with a full shovel and dumped it and had taken hold of the handles and turned around, dragging the shovel back, walking on the screenings. They had gone two or three steps when the clutch engaged, the shovel was jerked out of the hands of the stevedores and Emerson fell, and his foot was caught by the buckets on the endless belt in the leg, causing serious injuries. The owners of the grain had made separate contracts with the defendant company and with the stevedore company. The defendant company contracted to store the grain, furnish the marine leg, shovel, and power to operate them, also the rope tender, and the stevedore company contracted to take charge of the appliances in the hold of the vessel and furnish the necessary men to operate them and get the grain to the foot of the marine leg.

Both the stevedore company and Emerson had elected to come under the provisions of the Wisconsin workmen's compensation act, and Emerson filed a claim for his injury under the act, which was allowed and paid in due course, whereupon Emerson assigned his cause of action against the defendant to his employer, the stevedore company, which in

turn assigned it to the plaintiff company, which had insured the risk and paid the award.

The jury returned a special verdict finding (1) that there was no want of ordinary care with regard to the condition of the machinery; (2) that there was want of ordinary care in the operation of the machinery which pulled the shovel, (3) which want of ordinary care was the proximate cause of Emerson's injury; and (4) that the damages suffered by Emerson were $1,102.10. From judgment for the plaintiff on this verdict the defendant appeals.

For the appellant there were briefs by *W. M. Steele* of Superior, attorney, and *H. E. Kelly* and *Butler, Lamb, Foster & Pope* of Chicago, of counsel, and oral argument by *Mr. Steele*.

For the respondent there was a brief by *Luse, Powell & Luse* of Superior, and oral argument by *C. Z. Luse*.

The following opinion was filed April 29, 1919:

WINSLOW, C. J.    The defendant's chief contention in the case is that the trial court had no jurisdiction for the reason that the cause of action is maritime in its nature and within the sole jurisdiction of the admiralty courts of the United States. Two lesser contentions are made, however, which will be first briefly considered.

It is said that the rope tender and Emerson were, as matter of law, fellow-servants, and hence that there can be no recovery because the negligence found (*i. e.* the pulling of the rope by the rope tender at the wrong time) was the negligence of a fellow-servant. The contention must fail. Emerson and the rope tender were employed and paid by different masters. True, both masters were engaged in the same enterprise, namely, the unloading of the vessel, but this is not sufficient: there must be identity of control; here, the servants of neither master were under control of the other, and this is the ultimate test. 26 Cyc. 1284; 18 Ruling Case Law, p. 762, § 226; *Phillips v. C., M. & St. P. R. Co.*

64 Wis. 475, 25 N. W. 544; *Hoveland v. Nat. B. Works,* 134 Wis. 342, 114 N. W. 795; *Johnson v. E. C. Clark M. Co.* 173 Mich. 277, 139 N. W. 30; *Wagner v. Boston E. R. Co.* 188 Mass. 437, 74 N. E. 919; *Standard Oil Co. v. Anderson,* 212 U. S. 215, 29 Sup. Ct. 252.

In his charge to the jury the trial judge applied the doctrine of *res ipsa loquitur* and told the jury in substance that where both the apparatus and its operation are in the control of the defendant and an accident happens which could not ordinarily happen except by reason of defective apparatus or negligent operation, the fact of the accident might be sufficient of itself to justify a finding of defect in the apparatus or negligence in its operation. We see no error here. It is undisputed that the defendant had control of the apparatus and its operation, and it is also undisputed that the apparatus worked abnormally and operated when it should not operate, thereby causing Emerson's injury. Nothing more is needed to make the rule applicable to the case. *Cummings v. Nat. F. Co.* 60 Wis. 602, 18 N. W. 742, 20 N. W. 665; *Klitzke v. Webb,* 120 Wis. 254, 97 N. W. 901. Under the undisputed evidence we are unable to see how the jury could reach any other conclusion except that the rope tender negligently pulled the rope when it should not have been pulled.

We pass now to the question of jurisdiction. No attempt will be here made to review the decisions of the federal courts on the general subject of the jurisdiction of the district courts of the United States over torts occurring on shipboard. The harmony between them is certainly not complete and no good purpose would be subserved by lengthy discussion. A learned and very complete note collecting the authorities is to be found appended to the case of *Cleveland T. & V. R. Co. v. Cleveland S. Co.* (208 U. S. 316, 28 Sup. Ct. 414) 13 Am. & Eng. Ann. Cas. 1215.

The principles which govern the present case are not numerous nor do we think they are seriously in doubt.

Admiralty jurisdiction is vested exclusively in the United

Georgia C. Co. v. American M. Co. 169 Wis. 456.

States district courts, "saving to suitors, in all cases, the right of a common-law remedy where the common law is competent to give it." Judiciary Act of 1789, sec. 9; U. S. Judicial Code, sec. 24, sub. 3, and sec. 256.

The work of a stevedore in loading or unloading a ship lying at the wharf is maritime service and actionable injuries received during such work are so far maritime injuries that recovery may be had for them in the admiralty courts by libel *in personam* against the stevedore company which employs him.    *Atlantic T. Co. v. Imbrovek,* 234 U. S. 52, 34 Sup. Ct. 743.

Workmen's compensation laws provide remedies wholly unknown to the common law, which are incapable of enforcement by the ordinary processes of any court and are not saved to suitors by the saving clause of the judiciary act above cited.    *Southern Pac. Co. v. Jensen,* 244 U. S. 205, 37 Sup. Ct. 524.

The common-law jurisdiction of the state courts over torts committed at sea is preserved by the clause cited, but remedies by proceedings *in rem* can only be administered in the admiralty courts.    *Steamboat Co. v. Chase,* 16 Wall. 522; *Sherlock v. Alling,* 3 Otto (93 U. S.) 99; *The Hamilton,* 207 U. S. 398, 404, 28 Sup. Ct. 83; *McDonald v. Mallory,* 77 N. Y. 546; *Thompson v. Hermann,* 47 Wis. 602, 3 N. W. 579.

If no remedy is sought against the vessel itself, the case is not within the exclusive jurisdiction of the federal courts, but the state courts, administering common-law remedies, have concurrent jurisdiction.    1 Cyc. p. 811, sub. 2; 1 Corp. Jur. p. 1253, § 24.    Full consequential damages may be recovered in such an action according to the statute or common law of the state which has jurisdiction.    *Steamboat Co. v. Chase, supra; Standard Oil Co. v. Anderson,* 212 U. S. 215, 29 Sup. Ct. 252.    The case last cited is closely analogous in its facts to the case before us and seems well nigh conclusive on the questions involved.    Even though the action be

brought in the maritime court, it seems that full damages may be recovered in such a case as the one before us. *Imbrovek. v. Hamburg–Am. S. P. Co.* 190 Fed. 229. In case of injury to a seaman on the high seas the measure of recovery is limited to wages, maintenance, and cure *(Chelentis v. Luckenbach S. Co.* 245 U. S. 655, 38 Sup. Ct. 501) ; but this is an ancient rule of maritime law applying only to seamen on a voyage. *The Osceola,* 189 U. S. 158, 23 Sup. Ct. 483.

We find no prejudicial errors in the record.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on June 25, 1919.