### BELL v. SOUTHERN CASUALTY CO.*
### (No. 1154.)

(Court of Civil Appeals of Texas. Beaumont. Dec. 16, 1924. Rehearing Denied Jan. 7, 1925.)

**1. Evidence ⟨key⟩35 — Court cannot judicially know what constitutes common-law marriage in another state.**

A court of Texas cannot judicially know what constitutes a common-law marriage in the state of Louisiana under the law of that state.

**2. Evidence ⟨key⟩80(2)—Law of another state as to common-law marriage presumed same, in absence of contrary proof.**

In absence of proof to contrary, courts of Texas will presume that law of Louisiana relating to common-law marriage is the same as that of Texas.

**3. Marriage ⟨key⟩20(1)—Essential elements of "common-law marriage," stated.**

To prove a "common-law marriage," there must be proof that the parties either expressly or impliedly agreed to take each other for husband and wife during their natural lives, and that such agreement was followed by cohabitation and living together professedly as man and wife.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Common-Law Marriage.]

**4. Marriage ⟨key⟩20(1)—Common-law marriage in another state held not shown.**

Law of another state relative to common-law marriage being presumed the same as in Texas, proof of fact of living together in another state for six years without proving required agreement *held* insufficient to establish a common-law marriage in such other state.

**5. Marriage ⟨key⟩20(1)—That children born as result of cohabitation does not dispense with agreement.**

That children were born to parties as result of their living together does not dispense with agreement to create common-law marriage.

**6. Admiralty ⟨key⟩20—State Compensation Law inapplicable to injury to longshoreman engaged in performance of "maritime contract."**

Injury to a longshoreman who was assisting in loading a vessel engaged in foreign commerce and was on board such vessel at time of injury *held* "maritime" in nature, within admiralty jurisdiction, and Workmen's Compensation Law (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91) has no application,

and fact that Compensation Act is elective or optional rather than compulsory is immaterial.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Maritime Contract.]

Appeal from District Court, Jefferson County; E. A. McDowell, Judge.

Action by the Southern Casualty Company against Martha Bell to set aside award of compensation in defendant's favor, upon claim filed under Workmen's Compensation Act. Judgment ,for plaintiff, and defendant appeals. Affirmed.

C. A. Lord and Howell & Stephenson, all of Beaumont, for appellant.

Orgain & Carroll, of Beaumont, and Baker, Botts, Parker & Garwood, of Houston, for appellee.

HIGHTOWER, C. J. The appellee, Southern Casualty Company, filed this suit in one of the district courts of Jefferson county against the appellant, Martha Bell, praying for a judgment canceling and setting aside an award made in favor of Martha Bell by the Industrial Accident Board of this state upon a claim filed before that Board by Martha Bell for compensation under the Employers' Liability Act of this state (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246–1 to 5246–91), because of the death of one Tom Bell, who Martha Bell claimed was her husband at the time of his death. Due notice of Martha Bell's claim was given to the Southern Casualty Company, and it denied liability before the Board on the following grounds: (1) That Martha Bell was never the lawful wife of Tom Bell, deceased; and (2) that Tom Bell, at the time of his death, was engaged in the performance of a maritime contract, and that the injuries which resulted in his death were maritime in their nature, and that therefore the Employers' Liability Act of this state, commonly called the Workmen's Compensation Act, had no application to the claim of Martha Bell, and that the Industrial Accident Board was without authority to make any award in her favor.

After the Industrial Accident Board had made its award, as before stated, denying both defenses interposed by the Southern Casualty Company, due and legal notice that it would not abide by the award was given by the appellee, and this suit was filed to set the award aside, in due and proper time.

Martha Bell, in answer to this suit in the district court, interposed a general demurrer and general denial, and pleaded over against the appellee, by way of the usual cross-action, for compensation under the Employers' Liability Act of this state.

A jury was demanded in the case, but upon conclusion of the evidence a verdict

was peremptorily instructed in favor of the appellee, and judgment was rendered canceling and setting aside the award made by the Industrial Accident Board in favor of Martha Bell, and further that she take nothing in the district court as against the appellee, adjudging all costs against appellant, and from that judgment this appeal is prosecuted.

The facts, as shown by the record, are as follows: Tom Bell, the deceased, and the appellant, Martha Bell, were married in Jefferson county, Tex., under, license duly issued in 1918, and were living together as man and wife at the date of Tom Bell's death, which occurred on August 29, 1923. It is appellee's contention that this marriage was not a lawful marriage, for the reason, as it contends, that the appellant, at the time she attempted to marry Tom Bell, was the common-law wife of one Joseph Cole, from whom she had never been divorced, and that therefore her attempted marriage to Tom Bell, notwithstanding it took the form of a statutory marriage in this state, was illegal.

[1] In connection with this contention, appellee proved the following facts, in substance: That many years ago, when appellant was quite a young girl, between 13 and 15 years of age, she lived and cohabited in the state of Louisana with a man named Joseph Cole, and that this cohabitation continued for some 6 years or more, and that as a result of this cohabitation three children were born to appellant, all of whom were the children of Joseph Cole, and that no divorce was ever had by appellant from Joseph Cole, nor a divorce by him from her. There was neither pleading nor proof by appellee of the law of the state of Louisana relative to common-law marriages in that state, and this court cannot know judicially what constitutes a common-law marriage in the state of Louisana under the law of that state, if, in fact, such a marriage is recognized at all there.

[2, 3] If it were available to appellee to show by proof, in the absence of a pleading, what the law of Louisiana is relative to a common-law marriage, the burden was upon it to establish that defense by proof of such a marriage in the state of Louisiana, and in the absence of proof showing a valid common-law marriage in the state of Louisiana, it cannot maintain its contention here that Tom Bell was never the lawful husband of appellant. In the absence of proof to the contrary, it will be presumed by the courts of this state that the law of Louisiana relating to common-law marriages is the same as that of the state of Texas. While it is true that in this state a common-law marriage, when established, is just as valid and binding as a formal marriage under license, nevertheless there are certain essential elements of a "common-law marriage" that must be established by proof, and these elements are: (1) There must be proof that the man and woman between whom the common-law marriage is sought to be established entered into an agreement between themselves, either express or implied, to take each other for husband and wife during their natural lives; and (2) the proof must show that such agreement was followed by cohabitation and living together professedly as man and wife. If the proof falls short in either of these respects, the claimed common-law marriage is not established in the state of Texas, as ruled by our appellate courts. Grigsby v. Reib, 105 Tex. 597, 153 S. W. 1124, L. R. A. 1915E, 1, Ann. Cas. 1915C, 1011; Berger v. Kirby, Administrator, et al., 105 Tex. 611, 153 S. W. 1130, 51 L. R. A. (N. S.) 182.

[4, 5] Applying this rule, the proof offered by appellee for the purpose of showing a common-law marriage between appellant and Joseph Cole in the state of Louisiana fell short of establishing that relation, because there was no proof in this case to the effect that there was ever any character of agreement between appellant and Joseph Cole to live together as man and wife during their natural lives. True, as we have stated, the proof showed several years of living together and cohabitation, but this is only one of the essential elements of a common-law marriage in this state, and the presumption is, as we have said, that the law of Louisiana is the same as that of Texas, in the absence of proof to the contrary. Nor would the fact that children were born to the parties as a result of their living together and cohabitation in the state of Louisiana dispense with the necessary element of agreement between them to take each other for husband and wife and to live together in that relation during their natural lives. Therefore we must hold against appellee's contention that the proof in this case showed a common-law marriage between appellant and Joseph Cole in the state of Louisiana, which was never severed in any legal way, and that therefore appellant could not be the lawful wife of Tom Bell at the time of his injury and death.

The facts relative to Tom Bell's employment at the time he sustained the injury which resulted in his death are not in dispute, and are as follows: Tom Bell, at the time of his death, was a longshoreman in the employ of C. Flanagan & Sons, Inc., and that concern was engaged in the business of general contracting stevedores. Its business was to load and unload vessels and ships and boats engaged in interstate and foreign commerce. Flanagan & Sons, at the time Tom Bell received the injury which resulted in his death, was carrying with the appellee, Southern Casualty Company, a policy of insurance covering the employees of Flanagan & Sons, in accordance with the Em-

ployers' Liability Act of this state. On the morning of August 29, 1923, between 8 and 8:30 o'clock, Tom Bell, as an employee of Flanagan & Sons, was loading a vessel which was docked at the municipal docks of the city of Beaumont and lying upon the water of the Neches river, a navigable stream. The vessel was taking on a cargo of petroleum coke sold by the Magnolia Petroleum Company for transportation and shipment to a port in Germany. At the very time of the injury which resulted in Bell's death, he was standing upon the deck of the vessel in the discharge of his duties under his contract of employment as a stevedore for Flanagan & Sons, and while so engaged in the loading of the vessel a steel sheave block fell from above where he was standing on the boat, and struck Bell on the head, and he died almost instantly. There is no necessity for making a fuller statement of the facts in this connection, all of which are without dispute, and we will now proceed to apply the law as we understand it to these undisputed facts.

[6] It was and is appellee's contention upon the foregoing undisputed facts that Tom Bell, at the time he received the injury which resulted in his death, was engaged in the performance of a contract which was of a maritime nature, and that the injury which resulted in his death was maritime in nature, and that therefore the Employers' Liability Act of this state has no application to the claim asserted by appellant in this case, and that the Industrial Accident Board of this state had no authority to make any award in her behalf under the provisions of that act. It next contends that if the Employers' Liability Act of this state can be said to have application in this case, that the same is in violation of article 3, section 2, of the Constitution of the United States, and that therefore appellee was not liable.

In making these contentions, appellee invokes in their support the decision of the Supreme Court of the United States in the case of Southern Pacific Co. v. Jensen, 244 U. S. 205, 37 S. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900, and other later decisions following it. It is appellant's contention that the decision in the Jensen Case is not authority for the contentions made by the appellee, and does not preclude recovery by appellant in this case, for the reason, as contended by counsel for appellant here, that in the Jensen Case the Supreme Court of the United States was construing the Workmen's Compensation Act of the State of New York (Consol. Laws, c. 67), which was not elective or optional with the employer or employee, whereas, the Employers' Liability Act of the State of Texas is optional and elective with the employer and employee, and that such being true, the conclusions reached in the Jensen Case must be read in the light of the fact that the New York act was compulsory and the Texas act optional or elective, and that, so read, there is a clear distinction between the Jensen Case and the case at bar. This states, in substance, appellant's contention here.

Since the undisputed facts in this case show that at the time Tom Bell received the injury which resulted in his death, he was a longshoreman in the employ of Flanagan & Sons, general contracting stevedores, and was engaged in the performance of his duties under such employment in loading a vessel which was engaged in foreign commerce and destined for a foreign port, and that the injury which he received was inflicted while he was standing on the deck of the vessel, which was lying in navigable waters, and in no manner connected with the land or shore, there can be no question, under the authorities, that Tom Bell at that time was engaged in the performance of a contract which was maritime in nature, and that the injury resulting in his death was also maritime in nature. Unquestionably, the decision of the Supreme Court of the United States in the Jensen Case precludes any contention to the contrary.

Now, does the fact that the New York act, which was construed in the Jensen Case, was not elective or optional, render inapplicable the decision in that case to the facts of this? There have been numerous decisions, since that in the Jensen Case, touching the effect and application of Workmen's Compensation Acts, both by federal and state courts, wherein the question arose whether the employee who was injured or killed was engaged in the performance of a maritime contract and died from injuries of a maritime nature, and in all such decisions where it was necessary to determine the point, the Jensen Case has been followed, and no court of last resort has ever sought to distinguish that case on the ground that the New York act there construed was not elective or optional, unless it be the case of Berry v. Donovan & Sons, decided by the Supreme Court of Maine, 120 Me. 457, 115 A. 250, 25 A. L. R. 1021.

As said by the Supreme Court of Massachusetts in Duart v. Simmons, 231 Mass. 313, 121 N. E. 10:

"The ground of the Jensen decision as we understand it is that the kind of legislation represented by Workmen's Compensation Acts is beyond the jurisdiction of the states so far as it relates to admiralty and maritime affairs. The reasoning of that decision seems to us to apply equally to an elective as to a compulsory Workmen's Compensation Act. Consent of parties cannot confer jurisdiction. A statute which in its nature is outside the jurisdiction of the state, because within the exclusive domain of the federal government, cannot confer rights or be a bar to the enforcement of common-law obligations."

The following cases all hold, in line with the Jensen Case, that state Compensation Acts, even though elective or optional, are inapplicable where the injured employee is engaged in the performance of his duties under a maritime contract, and was injured on water within admiralty jurisdiction: Peters v. Veasey, 251 U. S. 121, 40 S. Ct. 65, 64 L. Ed. 180; Barrett v. Macomber (D. C.) 253 F. 205; Duart v. Simmons, 231 Mass. 313, 121 N. E. 10; Thornton v. Grand Trunk-Milwaukee Car Ferry Co., 202 Mich. 609, 168 N. W. 410; Foppen v. Peter J. Fase & Co., 219 Mich. 136, 188 N. W. 541; Soderstrom v. Curry & Whyte, 143 Minn. 154, 173 N. W. 649; O'Brien v. Scandinavian American Line, 94 N. J. Law, 244, 109 A. 517; Neff v. Industrial Commission, 166 Wis. 126, 164 N. W. 845; Dorman's Case, 236 Mass. 583, 129 N. E. 352.

In Peters v. Veasey, supra, the injured employee was a longshoreman, and while engaged in the performance of his duties in unloading a vessel at a wharf in New Orleans he fell through a hatchway and was injured. The court held that the work in which the employee was engaged was maritime in its nature; that the contract of employment was maritime; that the injuries received were maritime; that the rights and liabilities of the parties were covered by and were matters within admiralty jurisdiction; and that the Louisiana compensation statute (which is elective or optional) could have no application.

In Duart v. Simmons, supra, the injury to the employee occurred while he was engaged in unloading a cargo of coal from a vessel lying in navigable waters, and it was held that the work that he was doing and the injury received by him were maritime in nature, and that the Massachusetts Workmen's Compensation Act could have no application, although the act was elective or optional, both with the employer and employee.

In the Dorman Case, supra, a mate of a vessel was injured while the vessel was in the Boston Harbor, and he was awarded recovery under the Compensation Act by the Compensation Board of that state; but the Supreme Court of Massachusetts reversed the award under the state Compensation Act, and held that the case was exclusively within the admiralty jurisdiction of the federal courts.

In Neff v. Industrial Commission, supra, a sailor was injured on a steamer while it was lying in a slip for repairs under a contract that the sailor was to assist in the repairs and was to have regular employment as a wheelsman when the repairs were completed. The injury occurred during the course of repairs to the vessel. The court held that the contract was a maritime one, and that the Industrial Commission of the State of Wisconsin, under the Wisconsin act (which is elective and optional), was without jurisdiction to make any award, for the reason that the case was one exclusively within the admiralty jurisdiction of the federal courts.

The injured employee, in Soderstrom v. Curry, supra, at the time he was injured, was engaged in loading a vessel on navigable waters, and it was held that his contract was maritime and the injury maritime, and the Wisconsin act, although elective or optional, did not cover or could not be extended to a contract maritime in nature, and recovery under the act of that state was not permitted.

In Thornton v. Grand Trunk, etc., supra, the employee was a coal passer on a car ferry which was engaged in interstate commerce. It was held that his contract of service was maritime in nature, and also his injuries, and that under the decision in the Jensen Case admiralty had exclusive jurisdiction, and that no award could be made under the Michigan Workmen's Compensation Act, which was elective or optional.

The Compensation Act of the State of New Jersey is optional or elective, but it was held in O'Brien v. Scandinavian Line, supra, following the Jensen Case, that an employee who was engaged in the performance of a maritime contract and injured while so engaged could not recover under the Workmen's Compensation Act of that state, and that jurisdiction of the case was exclusively in the admiralty courts.

As we stated above, there is only one decision from a court of last resort, of which we are aware, that has refused or declined to apply the holding in the Jensen Case or to distinguish that case on the ground that the statute there under consideration was compulsory and not optional or elective, and that is the case of Berry v. Donovan & Sons, supra. We have read the Berry Case carefully and with much interest, but in our opinion the court there failed to properly construe the decision in the Jensen Case, and reached a conclusion inconsistent with that of nearly every other court, state or federal, that has had occasion to construe the Jensen Case. We therefore must decline to follow the conclusion reached in the Berry Case because of the overwhelming weight of authority against the conclusions there announced. We might remark further in this connection that the facts upon which the conclusions are reached in the Berry Case show that the employee there complaining was injured, not upon a vessel lying in navigable waters, but upon a wharf on the shore, or a part of the land, and under many decisions, both state and federal, while holding that the employee's contract of employment was one partly in the nature of a maritime contract, yet his injuries were received while upon the land, or appurtenances to the

land or shore, and that therefore his injuries were not maritime in nature. It seems to us that the court, in the Berry Case, might have correctly arrived at their disposition of that case without undertaking to question or distinguish the Jensen Case on the ground that the New York Act was compulsory.

This court, in Millers' Indemnity Underwriters v. Boudreaux, 245 S. W. 1025, held that the employee, who was working on a set of old ways in the waters of the Sabine river, was within the application of the Workmen's Compensation Act of this state, because the facts in that case showed that the ways upon which the employee was working extended out from the shore, and in legal contemplation was a part of the land or shore, and that therefore the employee's injuries were not maritime in nature. He was not upon a vessel engaged in interstate or foreign commerce and lying in navigable waters at the time he received his injuries and actively aiding in such commerce, and therefore we reached the conclusion that the Workmen's Compensation Act in this state had application. The Supreme Court of this state granted a writ of error against our holding (261 S. W. 137), but, through one of the Commissions of Appeals, held that our conclusions in the matter were correct. Nothing was said by the Commission of Appeals in that opinion that would indicate that that court understood the holding in the Jensen Case to be otherwise than declared by the numerous courts following it, as we have shown above, and it occurs to us that the Commission of Appeals and our Supreme Court had a splendid opportunity in the Boudreaux Case to question the soundness, or at least distinguish, the Jensen Case on the ground that the United States Supreme Court was there construing the compulsory act of the state of New York, but there was not the slightest intimation on the part of the Commission in that direction.

It follows from the conclusions above expressed that it is our opinion that the judgment of the trial court in this case should be affirmed, and it has been so ordered.